Brian D. Shapiro
Nevada Bar No. 5772
bshapiro@brianshapirolaw.com
BRIAN SHAPIRO LAW
228 S. 4th Street, Suite 300
Las Vegas, Nevada  89101-5709
(702) 386-8600 Telephone
(702) 383-0994 Facsimile

Jeffrey S. Lowenstein
Texas Bar No. 24007574
jeffl@bellnunnally.com
Marie A. Tenny
Texas Bar No. 24076730
mariet@bellnunnally.com
BELL NUNNALLY & MARTIN LLP
3232 McKinney Avenue, Suite 1400
Dallas, Texas  75204-2429
(214) 740-1410 Telephone
(214) 740-1499 Facsimile

**COUNSEL FOR PLAINTIFF
THE CADLE COMPANY**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| IN RE:<br><br>**Robert J. Krause,**<br><br>   Debtor. | §<br>§<br>§<br>§<br>§<br>§ | **CASE NO. 10-26094-MKN**<br>**CHAPTER 7** |
| **THE CADLE COMPANY,**<br>an Ohio Corporation,<br><br>   **Plaintiff,**<br><br>v.<br><br>**ROBERT J. KRAUSE**<br><br>   **Defendant.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADV. NO. _____ |

**PLAINTIFF'S ORIGINAL ADVERSARY COMPLAINT OBJECTING TO
DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523 and 11 U.S.C. § 727**

The Cadle Company, an Ohio Corporation ("Plaintiff" or "Cadle"), hereby files this Original Adversary Complaint Objecting to Dischargeability of Debt under 11 U.S.C. § 523 and 11 U.S.C. § 727 (the "Complaint") against Robert J. Krause ("Defendant" or "Krause"), and for cause of action would respectfully show the Court as follows:

### PARTIES

1. Plaintiff is an Ohio corporation located in Newton Falls, Ohio.

2. Defendant, Robert J. Krause is the Debtor in the above-captioned-and-styled bankruptcy case, who resides at 18 Wild Dunes Court, Las Vegas, Nevada 89113. He may be served at this address and by serving his attorney of record in the bankruptcy case, Roger P. Croteau, 720 S. 4th Street, Suite 202, Las Vegas, Nevada 89101.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(e)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2).

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and/or 1409.

### FACTUAL BACKGROUND

**A.  Plaintiff's Judgment Against Defendant**

5. On September 30, 1993, judgment was entered in the Superior Court of California, County of San Diego in favor of First National Bank, a National Banking Association, and against Defendant (the "Judgment").

6. On October 17, 1993, the Judgment was assigned by First National Bank to Plaintiff.

7. In October 1993, Plaintiff noticed Defendant with the Judgment, thus, Defendant had full knowledge of Plaintiff's Judgment against him.

8. As further evidence of Defendant's knowledge of the Judgment, on or about February 24, 1994, Defendant disputed the Judgment with Equifax and Plaintiff's Credit Manager, Brenda Garland, who verified the Judgment.

9. On or about July 25, 2003, the Judgment was renewed in California.

10. On or about August 5, 2003, the Judgment was again mailed to Defendant.

B. **Defendant Formed Numerous Corporate Entities and Fraudulently Transferred Assets Between Them For the Purposes of Hiding His Assets, Defrauding Plaintiff, and Hindering Plaintiff's Collection Efforts**

11. On October 14, 1998, Defendant and Jeannie Watson ("Watson") formed South Shore Properties, LLC ("South Shore").

12. South Shore was owed 50% by Defendant and 50% by Watson.

13. From approximately 1998 to approximately 2008, Defendant, Watson and South Shore secreted millions of dollars of Defendant's cash and assets into South Shore in order to defraud and hinder Plaintiff in the collection of its Judgment.

14. On or about January 28, 2005, Defendant and Watson formed Live Oak Ranch, LLC ("Live Oak").

15. From approximately 2005 to approximately 2008, Defendant, South Shore, Watson, and Live Oak, secreted and/or participated, assisted, aided, abetted, and conspired to secrete Defendant's assets into Live Oak in order to defraud and hinder Plaintiff in the collection of its Judgment.

16. On or about January 31, 2005, Defendant and Watson formed Lake Elsinore I and Lake Elsinore II, (the "Lake Elsinore Entities").

17. From approximately 2005 to approximately 2008, Defendant, Watson, South Shore, Live Oak and the Lake Elsinore Entities secreted and/or participated, assisted, aided,

abetted, and conspired to secrete Defendant's assets into the Lake Elsinore Entities in order to defraud and hinder Plaintiff in the collection of its Judgment.

18. On March 15, 2005, Defendant created Krause 2005 Trust ("Krause 2005 Trust") wherein Defendant was both the settlor and beneficiary, and wherein R. Glen Woods (of the law firm Woods Erickson Whitaker) was the trustee.

19. From approximately 2005 to approximately 2008, Defendant, Watson, South Shore, Live Oak, the Lake Elsinore Entities and the Krause 2005 Trust secreted and/or participated, assisted, aided, abetted, and conspired to secrete Defendant's assets into the Krause 2005 Trust in order to defraud and hinder Plaintiff in the collection of its Judgment.

20. On or about March 21, 2005, Defendant formed Quest West Capital Limited Partnership ("Quest West").

21. From approximately 2005 to approximately 2008, Defendant, Watson, South Shore, Live Oak, the Lake Elsinore Entities, the Krause 2005 Trust and Quest West secreted and/or participated, assisted, aided, abetted, and conspired to secrete Defendant's assets into Quest West in order to defraud and hinder Plaintiff in the collection of its Judgment.

22. On or about June 24 2005, Woods Erickson Whitaker, Defendant's counsel, drafted a second operating agreement for Live Oak which caused Defendant's ownership interest in Defendant Live Oak to be transferred to South Shore.

23. Defendant's transfer of ownership interest in Live Oak to South Shore was accomplished with the intent to defraud Plaintiff, and hinder Plaintiff in the collection of its Judgment.

24. On or about July 8 2005, Defendant and Watson formed R Plane, LLC, ("R Plane").

25. From approximately 2005 to approximately 2008, Defendant, Watson, South Shore, Live Oak, the Lake Elsinore Entities, the Krause 2005 Trust, Quest West and R Plane secreted and/or participated, assisted, aided, abetted, and conspired to secrete Defendant's assets into R Plane in order to defraud and hinder Plaintiff in the collection of its Judgment.

26. On or about July 8, 2005, Defendant and Watson formed R Toys, LLC, ("R Toys").

27. R Toys holds, or held at all relevant times herein, one sailboat, a Porsche Turbo, a Porsche Turbo Cayenne, a Porsche Cayenne, an Audi A-6 and a Harley Davidson, the combined value being approximately $600,000.00 which are or were used for the sole and exclusive benefit of Defendant.

28. From approximately 2005 to approximately 2008, Defendant, Watson, South Shore, Live Oak, the Lake Elsinore Entities, the Krause 2005 Trust, Quest West, R Plane and R Toys secreted and/or participated, assisted, aided, abetted, and conspired to secrete Defendant's assets into R Toys in order to defraud and hinder Plaintiff in the collection of its Judgment.

29. On or about August 26 2005, Defendant and Watson formed Arizona Development Corporation ("AZ Development").

30. From approximately 2005 to approximately 2008, Defendant, Watson, South Shore, Live Oak, the Lake Elsinore Entities, the Krause 2005 Trust, Quest West, R Plane, R Toys and AZ Development secreted and/or participated, assisted, aided, abetted, and conspired to secrete Defendant's assets into AZ Development in order to defraud and hinder Plaintiff in the collection of its Judgment.

31. On August 30, 2005, Defendant created the Robert J. Krause Trust wherein Defendant was the settlor and the trustee.

32. From approximately 2005 to approximately 2008, Defendant, Watson, South Shore, Live Oak, the Lake Elsinore Entities, the Krause 2005 Trust, Quest West, R Plane, R Toys, AZ Development and the Robert J. Krause Trust secreted and/or participated, assisted, aided, abetted, and conspired to secrete Defendant's assets into the Robert J. Krause Trust in order to defraud and hinder Plaintiff in the collection of its Judgment.

33. On September 9, 2005, Defendant executed a prenuptial agreement wherein he affirmed that he was the owner of a 99% limited partnership interest in Quest West and a 1% general partnership interest in Quest West which had a combined value of $32,323,500.00.

34. From approximately 1998 to present, Watson and Boca Raton Capital Limited Partnership ("Boca Raton") have secretly funneled money to and from Defendant in a continuing effort to defraud and hinder Plaintiff in the collection of its Judgment.

35. Quest West, South Shore, the Lake Elsinore Entities, Live Oak, R Toys, the Krause 2005 Trust, the Robert J. Krause Trust, Boca Raton, R Plane, AZ Development, Quest West, Inc. ("QW, Inc."), were maintained, created and capitalized by Defendant as part of an elaborate asset protection scheme, the purpose of which was to defraud Plaintiff and prevent the collection by Plaintiff of the Judgment.

C. **Defendant Violated State Orders By Disposing of Property Specifically Identified As Being Set Aside To Satisfy Plaintiff's Judgment**

36. On or about September 12, 2005, the Judgment was domesticated in the Eighth Judicial District Court of Nevada.

37. On or about September 27, 2005, the Judgment was mailed to Defendant.

38. On or about November 30, 2005 a Motion for Order to Show Cause Why a Charging Order and Order for Sale of Interest Should Not Issue was served on Defendant.

39. On or about January 9, 2006, a Notice of Entry of Order Granting Charging Order

was served on Defendant.

40. On or about January 11, 2006, Defendant, South Shore, Live Oak, Quest West, and the Lake Elsinore Entities were served with the Order Granting Charging Order and Directing Foreclosure Sale of Defendant's Interest.

41. Woods Erickson Whitaker, Defendant's counsel as agents and/or resident agents of the aforementioned entities, received the Order and, therefore, had actual knowledge that Plaintiff had a Judgment against Defendant Krause and was attempting to collect on said Judgment.

42. In January 2006, Defendant utilized his personal assets to purchase a $3,000,000.00 Spanish Trails home and caused said home to be titled in the name of the Krause 2005 Trust.

### D. Defendant Transfers Assets to the Krause 2005 Trust for Purposes of Hiding His Assets, Defrauding Plaintiff, and Hindering Plaintiff's Collection Efforts on the Eve of His Debtor's Examinations

43. On or about August 17, 2006, Plaintiff mailed an Exparte Motion for Order Allowing Judgment Debtor's Exam and Order Requiring Production of Documents (bank, financial and real property records) in Case No. A509949 in the District Court of Clark County, Nevada to Defendant.

44. Defendant was to be examined on September 12, 2006, with documents due on or before September 11, 2006.

45. Within days after Defendant was noticed with his judgment debtor's exam and order for production of documents, Defendant hurriedly drafted and executed a series of property assignments transferring millions of dollars of assets from Defendant to his asset protection trust, the Krause 2005 Trust.

46. Specifically, after having full knowledge of the Judgment and just after the receipt of the Exparte Motion for Order Allowing Judgment Debtor's Exam, on or about August 21, 2006, two assignments of property were executed by Defendant transferring to the Krause 2005 Trust all of Defendant's property, including: all interests in his LLC's and limited partnerships (worth tens of millions of dollars), all personal property including hundreds of thousands of dollars worth of home furnishings, artwork, diamond rings, diamond necklaces, watches, etc. (collectively, the "8/21/2006 Assignments").

47. The 8/21/2006 Assignments were completed by Defendant with full knowledge of the existing Judgment, and with the intent to defraud Plaintiff and hinder Plaintiff in the collection of its Judgment against Defendant Krause.

48. After having full knowledge of the Judgment and just after the receipt of the Exparte Motion for Order Allowing Judgment Debtor's Exam, on or about August 24, 2006, an assignment of a corporate stock in AZ Development wherein Defendant was the owner of the stock was executed by Defendant resulting in a transfer of all such stock from Defendant to the Krause 2005 Trust.

49. After having full knowledge of the Judgment and just after the receipt of the Exparte Motion for Order Allowing Judgment Debtor's Exam, on or about August 25, 2006, an assignment of a real estate lease wherein Defendant was the lessee/landlord was executed by Defendant resulting in a transfer of all Defendant's rights to receive rent payments under the lease to the Krause 2005 Trust.

50. In the December, 2006, Defendant was examined as a judgment debtor and he testified that he had no assets and that his liabilities were greater than his assets.

51. On April 19, 2007, Plaintiff noticed Defendant of another judgment debtor's

examination of Defendant.

52. On April 27 2007, once again within days after Defendant received the notice of judgment debtor's examination, Defendant executed a property assignment fraudulently transferring a work of art from Defendant to his asset protection trust, the Krause 2005 Trust.

53. Again, on August 1 2007, Defendant executed a property assignment fraudulently transferring diamond earrings worth $8,499.99 from Defendant to his asset protection trust, the Krause 2005 Trust.

54. Again, on August 1 2007, Defendant executed a property assignment fraudulently transferring a diamond necklace worth $2,499.99 from Defendant to his asset protection trust, the Krause 2005 Trust.

55. Again, in April of 2008, Defendant drafted and executed a property assignment fraudulently transferring an amethyst goblet and teacart worth $1,386.98 from Defendant to his asset protection trust, the Krause 2005 Trust.

56. These assignments were completed by Defendant with full knowledge of the existing Judgment, and with the intent to defraud Plaintiff and hinder Plaintiff in the collection of its Judgment against Defendant.

E. **Defendant is Found By the State Court To Have Submitted Materially False Reponses to Interrogatories; Defendant Responds By Transferring Additional Assets to Defraud Plaintiff and Hinder Plaintiff's Collection Efforts**

57. On March 26, 2008, an Order was entered by the District Court of Clark County, Nevada, in Case No. A509949 in a garnishment proceeding brought by Plaintiff against Defendant and Quest West. A true and correct copy of the March 26, 2008 Order is attached hereto as <u>Exhibit A</u> and incorporated herein by reference. In the garnishment proceeding, Defendant submitted sworn interrogatory responses claiming that he was not an employee of

Quest West and that Quest West was not indebted to Defendant in any way. The court found that Defendant had a compensation agreement with Quest West that required Quest West to "pay such sums as required for Mr. Krause's living expenses as determined by Mr. Krause and as submitted to the Partnership for payment." The court further found that, Quest West paid for, *inter alia*, the following: Defendant's (1) groceries; (2) extensive travel with his wife; (3) utilities; (4) credit cards; (5) ATM withdrawals; (6) valet services; (7) cleaners; (8) dining out; (9) car maintenance, gas and other expenses; (10) insurance; (11) medical/dental bills for he and his wife; (12) pool services; (13) boat; (14) country club; (15) campaign contributions; (16) gifts to children; (17) construction; and (18) clothing for he and his wife. In all, this "compensation" averaged in excess of $30,000 per month.

58. Given the extensive nature of personal expenditures made by Quest West on Defendant's behalf, the court determined that Quest West was indebted to Defendant any time he incurred a "living expense." The court therefore held that Defendant had submitted materially false responses to interrogatories in bad faith. Because of such conduct, the Court awarded a judgment against Quest West for an amount in excess of $495,000.00. A true and correct copy of the April 11, 2008 Judgment is hereto as Exhibit B and incorporated herein by reference.

59. In furtherance of Defendant's scheme to defraud Plaintiff and frustrate the collection of Plaintiff's Judgment and Plaintiff's April 11, 2008 judgment against Quest West, Defendant, on behalf of Quest West, transferred all of Quest West's assets to the various other entities discussed herein and others, rendering Quest West insolvent.

**F. Defendant's 8/21/2006 Assignments of His Assets to the Krause 2005 Trust Are Found By the State Court To Be Fraudulent Transfers**

60. On February 24, 2009, the court in Case No. A509949 entered an order finding that the 8/21/2006 Assignments were a fraudulent conveyance. A true and correct copy of the

February 24, 2009 Order is attached hereto as <u>Exhibit C</u> and incorporated herein by reference. Specifically, the Court found as follows: (1) the 8/21/2006 Assignments were executed by Defendant when he had full knowledge of Plaintiff's Judgment; (2) the Defendant made the 8/21/2006 Assignments without receiving reasonably equivalent value; and (3) the transfer of assets rendered Defendant insolvent. The court then ordered that the 8/21/2006 Assignments were void, that title to all property was re-vested in Defendant, and that Defendant was enjoined from any disposition or transfer of the assets relating to the 8/21/2006 Assignments.

61. The February 24, 2009 Order was subsequently affirmed and adopted by the court in Case No. A564243 in the District Court of Clark County, Nevada, a case seeking to unwind additional fraudulent transfers and hold other parties accountable for their actions in conspiring with, aiding and abetting Defendant in his scheme to defraud. A true and correct copy of the September 29, 2009 Order in Case No. A564243 is attached hereto as <u>Exhibit D</u> and incorporated herein by reference.

62. Following the unwinding of the 8/21/2006 Assignments, Plaintiff, with the court's blessing, conducted a Sheriff's sale of some of the assets described in the 8/21/2006 Assignments. The term "some" is used because many of the assets were secreted by Defendant and were not among his possessions. For example, Defendant listed the following as assets subject to the 8/21/2006 Assignments: (1) a 4 carat diamond ring; (2) a 3 carat diamond ring; (4) a 1 carat diamond necklace; and (4) thirty-five watches. While some watches were recovered, many had vanished, along with all the diamond jewelry. Interestingly, Defendant's wife has since testified that at some point in 2010 she sold the diamond jewelry for $2,500 to a man named Joe on a sidewalk outside of a gas station in Las Vegas. This questionable transaction took place in spite of the fact that the jewelry was adjudged to belong to Defendant and

Defendant was prohibited by court order from disposing of the assets without prior court approval.

63. Over the past 18 years, Defendant has made every effort, legal or otherwise, to prevent Plaintiff from collecting upon its Judgment. Only after having been thwarted by a Nevada court and having his nefarious dealings unwound did Defendant finally seek the protections of this Court by filing bankruptcy. Put simply, the protections afforded to debtors in bankruptcy are designed to give clean debtors a fresh start; not to give recalcitrant fraudfeasors a "get out of jail free" card after 18 years of deplorable conduct.

## CAUSES OF ACTION

### Count One
### OBJECTION TO DISCHARGE OF DEBT UNDER 11 U.S.C. § 523(a)(6)

64. Plaintiff repeats and realleges the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

65. Defendant willfully and maliciously injured Plaintiff, or the property of the Plaintiff by, including without limitation, (1) hiding assets; (2) disposing of assets specifically identified by court order as being subject to sale to satisfy Plaintiff's Judgment in violation of said court order; (3) engaging in multiple fraudulent transfers precipitated by Plaintiff's collection efforts; (4) engaging in a long running, complex corporate shell game in order to hide assets and shield income from Plaintiff's collection efforts; (5) by giving false responses to interrogatories to a state court in an effort to shield assets and income from Plaintiff's collections efforts; and (6) after failing to shield his Quest West assets and income, transferring those assets and income sources to other individuals and entities.

66. Plaintiff has been damaged by Defendant's conduct. Therefore, Plaintiff is entitled to a determination that its claim against Defendant is non-dischargeable under 11 U.S.C.

§ 523(a)(6).

## Count Two
### OBJECTION TO DISCHARGE OF DEBT UNDER 11 U.S.C. § 523(a)(2)

67. Plaintiff repeats and realleges the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

68. Defendant obtained money and property through false pretenses, false representations or actual fraud. Defendant, formed and utilized numerous corporations, partnerships, limited partnerships, limited liability companies, and asset protection trusts in a complex scheme to shield his assets and income from Plaintiff's collection efforts. Defendant further submitted false statements to tribunals and violated state court orders by disposing of property specifically identified as being set aside to satisfy Plaintiff's Judgment. In addition to creating entities under false pretenses (*i.e.*, to hide assets, not to conduct legitimate business) and making false representations to tribunals (which ultimately gave rise to a new judgment in Plaintiff's favor), Defendant's concerted pattern of dishonest conduct amounts to actual fraud in that he was actively engaged in trickery and other unfair methods and practices designed to deceive and to cheat Plaintiff from obtaining what it was rightfully owed.

69. Through such actions, Defendant obtained money and property that should otherwise have gone to Plaintiff, and Defendant misappropriated and converted the money and property.

70. Plaintiff has been damaged by Defendant's false pretenses, false representations or actual fraud. Therefore, Plaintiff is entitled to a determination that its claim against Defendant is non-dischargeable under 11 U.S.C. § 523(a)(2).

## Count Three
## OBJECTION TO DISCHARGE OF DEBT UNDER 11 U.S.C. § 727(a)(2)

34. Plaintiff repeats and realleges the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

35. Defendant with the intent to hinder, delay or defraud creditors of the Defendant, the estate, and the trustee of the estate charged with custody of property, has concealed, transferred, removed, destroyed, or mutilated, or permitted to be concealed, transferred, removed, destroyed or mutilated, property of the Defendant within one-year before the date of the filing of the petition or property of the estate after the date of the filing of the petition or hidden assets and failed to report such assets.

36. Defendant has intentionally hindered, delayed, or defrauded the Defendant and estate's creditors by, among other things: (1) hiding assets; (2) disposing of assets specifically identified by court order as being subject to sale to satisfy Plaintiff's Judgment in violation of said court order; (3) engaging in multiple fraudulent transfers precipitated by Plaintiff's collection efforts; (4) engaging in a long running, complex corporate shell game in order to hide assets and shield income from Defendant's creditors' collection efforts; (5) by giving false responses to interrogatories to a state court in an effort to shield assets and income from Plaintiff's collections efforts; and (6) after failing to shield his Quest West assets and income, transferring those assets and income sources to other individuals and entities.

37. Defendant's hypothetical discharge should, therefore, be denied under 11 U.S.C. § 727(a)(2).

## Count Four
## OBJECTION TO DISCHARGE OF DEBT UNDER 11 U.S.C. § 727(a)(3)

34. Plaintiff repeats and realleges the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

35. Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained.

36. Defendant has intentionally concealed, destroyed, mutilated, falsified or failed to keep recorded information about his financial condition by, among other things, engaging in a long running, complex corporate shell game in order to hide assets and shield income from collection efforts and giving false responses to interrogatories to a state court in an effort to shield assets and income from collection efforts.

37. Defendant's hypothetical discharge should, therefore, be denied under 11 U.S.C. § 727(a)(3).

## Count Five
## OBJECTION TO DISCHARGE OF DEBT UNDER 11 U.S.C. § 727(a)(5)

38. Plaintiff repeats and realleges the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

39. In the years preceding this bankruptcy filing, Defendant has had significant income from numerous sources, including the money that Defendant received from his compensation agreement with Quest West. Defendant has failed to explain the disposition of such proceeds. Additionally, Defendant has failed to explain the disposition of known assets, assets transferred through multiple fraudulent transfers, and assets disposed of by the means of Defendant's long running, complex corporate shell game in order to hide assets.

40. Defendant has failed to explain satisfactorily the loss of assets or deficiency of assets to meet Defendants' liabilities.

41. Defendant's hypothetical discharge should, therefore, be denied pursuant to 11 U.S.C. § 727(a)(5).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant Robert J. Krause be cited to appear and answer herein, and that Plaintiff be granted judgment against the Defendant:

a. Denying Robert J. Krause's discharge as to all obligations owing to The Cadle Company, as set forth under section 523 of the Bankruptcy Code;

b. Denying Robert J. Krause's discharge as to all obligations owing to all of Robert J. Krause's creditors, as set forth herein under section 727 of the Bankruptcy Code;

c. For actual damages, including, prejudgment interest at the highest rate allowed by law, post-judgment interest at the highest rate allowed by law, reasonable attorneys' fees, costs of court, exemplary damages as allowed by law, punitive damages as allowed by law; and

d. all such other and further relief, at law and in equity, to which Plaintiff may show itself justly entitled to receive.

Dated: August 8, 2011

Respectfully Submitted,

BRIAN SHAPIRO LAW

By: _____
Brian D. Shapiro
Nevada Bar No. 5772

228 S. 4th Street, Suite 300
Las Vegas, Nevada 89101-5709
(702) 386-8600 Telephone
(702) 383-0994 Facsimile

**BELL NUNNALLY & MARTIN, LLP**

By: /s/ *Jeffrey S. Lowenstein*
    Jeffrey S. Lowenstein
    Texas Bar No. 24007574
    Marie A. Tenny
    Texas Bar No. 24076730

3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204-2429
(214) 740-1400 Telephone
(214) 740-1499 Facsimile

**COUNSEL FOR PLAINTIFF THE CADLE COMPANY**

828831_1.DOCX